**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **J.R.R.** | § | |
| | § | |
| **v.** | § | **A-20-CV-1236-RP** |
| | § | |
| **CITY OF FREDERICKSBURG et al.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion to Dismiss (Dkt. No. 19) and Plaintiff J.R.R's

Motions to Seal Case and File Amended Complaint (Dkt. Nos. 22, 23, 25, 26).  The undersigned

submits this Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B),

Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules.

## I.  GENERAL BACKGROUND

Plaintiff J.R.R. brings this suit against the City of Fredericksburg, Fredericksburg Police

Department, Fredericksburg Fire and EMS Department, and multiple individual defendants,

including Chief of Police Steven Wetz, Sergeants Trey Schnelle and Mick McMickle, Officers

Preston Schmidt and Michael Quinn, and Paramedics Amy Burrier and Mike Pressler, alleging

claims of unlawful search and seizure and excessive force in violation of her Fourth Amendment

rights under 42 U.S.C. § 1983, as well as violations of the Public Health and Welfare Act, 42 U.S.C.

§ 14505.

J.R.R. filed her initial complaint on December 21, 2020.  Dkt. No. 1.  On December 30,

2020, she filed her First Amended Complaint, as a matter of course under Rule 15(a).  Dkt. No. 4.

On January 29, 2021, Defendants moved for dismissal, asserting that as a matter of law none of

J.R.R.'s claims survive Rule 12(b)(6). Dkt. No. 19. Since the Defendants filed their motion to dismiss, J.R.R. has filed three motions, each of which requests leave to amend her complaint. *See* Dkt. Nos. 22, 23, 25, 26. In order to address the motion to dismiss in the context of the most recent amendment, the Court hereby **GRANTS** J.R.R.'s most recently filed motion to amend (contained in Dkts. No. 25 and 26), and the Clerk is directed to file the proposed complaint attached to Dkt. No. 25 (pp. 2-89 of that document) as the Second Amended Complaint in this case.[1] Accordingly, the Court considers the Defendants' motion to dismiss in the context of the live pleading, J.R.R.'s Second Amended Complaint (Dkt. No. 25).

According to J.R.R.'s Second Amended Complaint, on January 4, 2019, Fredericksburg Police Department received a call from an off-duty officer reporting that he had witnessed a male subject violently assaulting a female subject, later identified as J.R.R., at a gas station before the two left the scene together in J.R.R.'s vehicle. Dkt. No. 25 at ¶¶ 16-19. The off-duty officer provided a description of the car and the location of the incident, and Fredericksburg Police Officer Michael Quinn was dispatched to the area. *Id.* at ¶ 19. At the time of the report and dispatch, Officer Preston Schmidt was on a traffic stop in the area. *Id.* In a police report written by Schmidt, he states that he "observed [a] vehicle matching the description . . .and turned around on the vehicle." *Id.* His report goes on to state that "the vehicle failed to signal required distance before turning," and he then initiated a traffic stop on the vehicle. *Id.* In her Second Amended Complaint, J.R.R. denies breaking any traffic laws and alleges that Schmidt "intentionally misstates on [the] police report that plaintiff did not use turn signal." *Id.* at ¶¶ 21-22. J.R.R. asserts that she was pulled over by Schmidt based

---

[1]Having granted the most recent amended complaint, the Court **DISMISSES** as **MOOT** the two previous motions to seal and amend (Dkt. Nos. 22, 23).

only on the description of her vehicle and the off-duty officer's report that she had been violently assaulted. *Id.* at ¶ 23.

In her complaint, J.R.R. states that during the traffic stop she informed Officer Schmidt and Sergeants Mick McMickle and Trey Schnelle several times that she wanted to go home, alleging that Schmidt, McMickle, and Schnelle illegally detained her by restricting her freedom of movement. *Id.* at ¶¶ 25-27, 30-32.  After observing that J.R.R. had visible injuries and smelled of alcohol, Officer Schmidt called Fredericksburg Fire and EMS to the scene. *Id.* at ¶¶ 18-19, 29. J.R.R. alleges that her Fourth Amendment rights were thus further violated  because she was forced to wait for EMS to arrive. *Id.* at ¶¶ 31-32.  She also alleges that at some point during the traffic stop, Officer Michael Quinn illegally searched her vehicle without a warrant, in violation of her Fourth Amendment right against unreasonable searches. *Id.* at ¶¶ 33-34.

Once Fredericksburg Fire and EMS Paramedics Amy Burrier and Pressler arrived on the scene to treat J.R.R. for her injuries, J.R.R. repeatedly informed them that she wanted to go home. *Id.* at ¶¶ 35-38.  She alleges that Burrier and Pressler ignored her requests and thus also violated her Fourth Amendment rights by illegally detaining her in their paramedic vehicle. *Id.*  She alleges Burrier and Pressler further violated her right against unreasonable seizure by transporting her to Hill County Memorial Hospital against her will. *Id.*

Once at the hospital, J.R.R. was arrested by Sergeants Schnelle and McMickle for Driving While Intoxicated.[2]  *Id.* at ¶¶ 44-45.  J.R.R. contends that there was no probable cause to arrest her because she was not pulled over based on any violation of the law, but rather based on the report that

---

[2] The DWI charge was later dropped by Gillespie County and no criminal charges were ever filed against J.R.R.  Dkt. No. 25 at ¶¶ 56-57.

she had been assaulted. *Id.* at ¶ 46. Therefore, J.R.R. argues, the arrest was "unreasonable due to the circumstances," and "showing excessive force as plaintiff was not a danger to officers or the public." *Id.* at ¶ 55. Her complaint further alleges that Schnelle illegally seized her purse and her hospital discharge folder from the hospital. *Id.* at ¶¶ 52-53.

J.R.R.'s Second Amended Complaint asserts that at all relevant times, the named individual defendants acted under color of law in their official capacities as employees of the City of Fredericksburg, Fredericksburg Police Department, and Fredericksburg Fire and EMS. *Id.* at ¶¶ 63-64. She alleges that Chief of Police Steve Wetz is the relevant policy maker for the Fredericksburg Police Department, and asserts that the actions of Sergeants Schnelle and McMickle and Officers Schmidt and Quinn constitute standard practice for the Fredericksburg Police Department in investigating assaults against women. *Id.* at ¶¶ 60, 65-66, 70. She also alleges that the actions of Paramedics Burrier and Pressler illustrate a policy and standard of practice and custom to illegally detain citizens under color of law within the Fredericksburg Fire EMS. *Id.* at ¶ 68.

Lastly, J.R.R. alleges that Sergeants Schnelle and McMickle and Officers Schmidt and Quinn also violated 42 U.S.C. § 14505 Public Health and Welfare by failing to keep her "safe from harm" and for their "deliberate indifference" to her "substantial risk of harm" on January 4, 2019. *Id.* at ¶¶ 7-10, 57. Defendants move to dismiss all of J.R.R.'s claims pursuant to Rule 12(b)(6). Dkt. No. 19.

## II. MOTION TO DISMISS

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss

for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).  The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Pro se complaints are liberally construed in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, a petitioner's pro se status does not offer her "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. Mbank Houston N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

**B.     Analysis**

As noted, J.R.R. brings this lawsuit under 42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color

of state law." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854-55 (5th Cir. 2012). Defendants' motion asserts that J.R.R.'s suit should be dismissed in its entirety because none of her claims survive Rule 12(b)(6). Dkt. No. 19. The Court considers J.R.R.'s claims against the respective defendants in turn.

### i.      Claims Against the Police and Fire and EMS Departments

Pursuant to Fifth Circuit precedent, a plaintiff may not bring civil right claims against a servient agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991). Neither the Fredericksburg Police Department nor the Fredericksburg Fire and EMS Department have the legal capacity to engage in litigation separate from the City of Fredericksburg. *Est. of Schroeder v. Gillespie Cty*., 23 F. Supp. 3d 775, 781 (W.D. Tex. June 2, 2014); *Knight v. City of Balch Springs*, 2011 WL 3519938, at *1 (N.D. Tex. July 25, 2011). The proper defendant to respond to claims against these departments is the City of Fredericksburg. Accordingly, the undersigned recommends dismissal of the claims against the Fredericksburg Police Department and the Fredericksburg Fire and EMS Department in their entirety.

### ii.      Claims Against the City of Fredericksburg

Next, J.R.R. asserts *Monell* claims against the City of Fredericksburg based on the actions of the individual Fredericksburg Police Officers and Paramedics. Dkt. No. 25 at ¶ 61. A governmental entity such as the City of Fredericksburg cannot be held liable under Section 1983 for the actions of its individual employees or officials—rather, it can only be liable for adopting and implementing a formally declared policy, practice, or custom that deprived the plaintiff of a constitutional right. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *Scott v. Moore*, 114

F.3d 51, 54 (5th Cir. 1997).  J.R.R. must allege some policy enacted by the City of Fredericksburg, and must show this policy was the "moving force" behind her alleged injury.  *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Official policy or custom can be established in several ways. An official policy may be a policy statement, ordinance, regulation, or decision that has been officially adopted and promulgated by a policymaker. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).  A policy may also arise from a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.*  A policy is promulgated by the municipal policymaker when it "results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "Courts have consistently found that chiefs of police are official law enforcement policymakers for the purposes of municipal liability under § 1983." *Kincheloe v. Caudle*, 2009 WL 3381047 (W.D. Tex. Oct. 16, 2009) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1279 n. 45 (5th Cir. 1992).

J.R.R. identifies Chief of Police Steve Wetz as the policy maker for the purpose of her claims.  Dkt. No.  25 at ¶¶ 65-66.  Her Second Amended Complaint alleges that the City of Fredericksburg, Fredericksburg Police Department, and Fredericksburg Fire and EMS have "policies and standard of practice and custom in place to in order to illegally detain citizens while acting 'under color of law,' while working in cooperation with each other in uniform." *Id.* at ¶ 68.  She further alleges that the Fredericksburg Police Department "engages in a pattern of practice that violates United States Constitution and Laws and fails to protect victims of serious physical assault

by not adequately investigating and correctly charging those accused of violence and protecting victims of violence appropriately in violation of the Violence Against Women Act of 1994." *Id.* at ¶ 71. As with much of her allegations, there are no specific facts to support this conclusory allegation.

Based on her Second Amended Complaint, J.R.R. has not sufficiently pled facts demonstrating that Chief Wetz, alleged to be the City's final policymaker for the purpose of her claims, adopted or maintained the policy of illegally detaining citizens or of failing to protect victims of violence in violation of the Violence Against Women Act. Importantly, J.R.R. does not allege any similar prior incidents or any facts indicating a widespread practice. A single incident does not show a policy or custom. *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009). Nor is one incident sufficient to support an inference of a policy based on a customary practice. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability."). Because J.R.R. fails to plead facts that "show similar incidents of excessive force," knowledge or approval by a policymaker of a pattern or practice of excessive force, or a failure to train officers by a final policymaker, she has failed to state a plausible claim of municipal liability. *See, e.g. Knight*, 2011 WL 3519938, at *4, n. 4 (collecting cases). Accordingly, J.R.R.'s § 1983 claims against the City of Fredericksburg should be dismissed.

### iii.      Claims Against Chief of Police Steve Wetz

J.R.R's Second Amended Complaint also alleges claims against Chief of Police Steve Wetz. "Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent." *Familias Unidas v. Briscoe*, 619 F.2d 391,

403 (5th Cir. 1980). A suit against an official "generally represent[s] only another way of pleading an action against an entity of which the officer is an agent." *Monell*, 436 U.S. at 690 n.55. Accordingly, the dismissal of the claims against the City of Fredericksburg necessitates the dismissal of the official capacity claims against Chief Wetz. .

To the extent J.R.R. brings individual capacity claims against Chief Wetz, those claims fail as well. Under Fifth Circuit precedent, "[o]fficials acting in a supervisory role may only be held liable under § 1983 if they either (1) affirmatively participate in acts that cause a constitutional deprivation or (2) implement unconstitutional policies that causally result in the plaintiff's injury." *Thompson v. Johnson*, 348 Fed.Appx. 919, 921 (5th Cir. 2009). To state a plausible failure to train claim J.R.R. must allege that: "(1) [Wetz] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of [J.R.R.'s] rights; and (3) the failure to supervise or train amounted to deliberate indifference to [her] constitutional rights." *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005). A plaintiff can prove deliberate indifference by showing "at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Id.* (quoting *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)). Otherwise, "[u]nder § 1983 ... a government official can be held liable only for his own misconduct." *Carnaby v. City of Hous.*, 636 F.3d 183, 189 (5th Cir. 2011). J.R.R. fails to plead any facts that Chief Wetz participated in the alleged incidents or that show how Chief Wetz failed to train the individuals involved. The undersigned therefore recommends the claims against Chief Wetz be dismissed.

#### iv.    Claims Against Sergeants Schnelle and McMickle, Officers Schmidt and Quinn, and Paramedics Burrier and Pressler

J.R.R. asserts § 1983 claims against multiple individual defendants in both their individual and official capacities, including Sergeants McMickle and Schnelle, Officers Schmidt and Quinn, and Paramedics Burrier and Pressler.  As with the official capacity claims against Chief Wetz, any official capacity claims against these individuals are redundant of her claims against the City of Fredericksburg and should be dismissed in light of the dismissal of the claims against the City.  *See Familias Unidas*, 619 F.2d at 403; *Monell*, 436 U.S. at 690 n.55.

As for J.R.R.'s claims against these individuals in their individual capacities, Defendants' motion argues the claims should be dismissed based on qualified immunity.  Dkt. No. 19 at 4-5. Qualified immunity is an affirmative defense to a section 1983 claim.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  It protects public officials who are performing discretionary functions from suit, unless their conduct violates a clearly established constitutional right.  *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).  "The burden is on the plaintiff to overcome a defendant's defense of qualified immunity."  *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994).  Therefore, when a governmental employee raises qualified immunity, the complaint must "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity."  *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

"Once an officer invokes the defense," as the Defendants have done here, "the plaintiff must rebut it by establishing (1) that the officer violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In Fourth Amendment cases, the Supreme Court stresses "the need to 'identify a case where an officer

10

acting under similar circumstances ... was held to have violated the Fourth Amendment.'" *Id.* at 590

(citing *White v. Pauly*, 137 S.Ct. 1843, 1866 (2017)). While there does not have to be a 'case directly

on point,' existing precedent must place the lawfulness of the particular arrest 'beyond debate.'" *Id.*

(citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  While there are "rare" exceptions, "'a body

of relevant case law' is usually necessary to 'clearly establish'" that an officer violated the Fourth

Amendment. *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)).

Here, Defendants' motion asserts that each of the individual defendants are entitled to

qualified immunity.  Specifically, the motion argues that "Defendants Burrier and Pressler provided

health care services to the Plaintiff prior to her transport to the hospital," and that "[i]ndividually

named defendant officers acted pursuant to their discretionary authority as City of Fredericksburg

Police Officers, performing their discretionary functions and at all times acted in good faith."  Dkt.

No. 19 at 4.  The motion further asserts that J.R.R.'s rights were not violated under § 1983 as

alleged.  *Id.* at 5.

With regard to J.R.R.'s claims that Sergeants McMickle and Schnelle, Officers Schmidt and

Quinn, and Paramedics Burrier and Pressler violated her Fourth Amendment rights against

unreasonable searches and seizures and excessive force, J.R.R.'s pleadings are insufficient to

overcome the Defendants' defense of qualified immunity.  Where a defendant pleads qualified

immunity and shows he is a governmental official whose position involves the exercise of discretion,

the plaintiff then has the burden "to rebut this defense by establishing that the official's allegedly

wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir.

1997).  Courts in the Fifth Circuit do "not require that an official demonstrate that he did not violate

clearly established federal rights; our precedent places that burden upon plaintiffs." *Id.*  Here,

J.R.R.'s response to Defendants' motion raising qualified immunity includes no rebuttal to the defense. *See* Dkt. No. 21. Accordingly, the individual capacity claims should be dismissed.

### III.  LEAVE TO AMEND

Rule 15(a)(2) provides that a party may amend its pleading with leave of court. FED. R. CIV. PRO. 15(a)(2). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 177 (5th Cir. 2016) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). Thus, the Fifth Circuit has stated that "[a] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion [within] the contemplation of Rule 15(a)." *Id.* (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

In the situation presented by this case, it would not be appropriate to permit J.R.R. to replead prior to dismissal. To date, J.R.R. has amended her complaint once as a matter of course (Dkt. No. 4), and since Defendants filed their motion to dismiss she has sought leave to amend three additional times, the most recent of which the Court has granted. Despite all of these amendments, the Second Amended Complaint still fails to plead any specific facts to support her claims, and instead relies on wholly conclusory allegations. Given this, it is not appropriate to permit yet another amendment, and the motion to dismiss should be granted with prejudice.

### III.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' Motion to Dismiss (Dkt. No. 19) and **DISMISS** Plaintiffs' suit with prejudice, as discussed above.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SIGNED this 28th day of May, 2021.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

13